AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)          ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
4/11/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ TV _____ DEPTUY

# UNITED STATES DISTRICT COURT

for the

Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
April 11, 2023
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MR _____ DEPUTY

United States of America

v.

BOBBY JOE JACKSON JR.,
  Register Number: 24472-112,

  Defendant

Case No.   2:23-mj-01714

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

As described in the accompanying attachment, defendant violated the following statutes:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1344, 1349, 1028A | Conspiracy to Commit Bank Fraud, and Aggravated Identity Theft |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s *Lyndon Versoza*
*Complainant's signature*

Lyndon Versoza, Postal Inspector
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   April 11, 2023

*Judge's signature*

City and state:   Los Angeles, California

Hon. Pedro V. Castillo, U.S. Magistrate Judge
*Printed name and title*

AUSA Andrew Brown, 11th Floor, x0102

**Complaint Attachment**

Count One, 18 U.S.C. § 1349

Beginning on an unknown date, and continuing through at least July 22, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant BOBBY JOE JACKSON JR., and others, conspired to commit bank fraud, in violation of Title 18, United States Code, Section 1344.  The object of the conspiracy was carried out, and to be carried out, in substance, as follows: Defendant would acquire the personal identifying information of others from his friends and family, and by purchasing it on the black market for victims of identity theft.  Defendant would use that information to apply for unemployment benefits in those names, falsely stating that those persons had recently lost their jobs.  After the California Employment Development Department had Bank of America mail debit cards to addresses defendant controlled, he would have his co-conspirators use those cards to withdraw in cash the unemployment benefits and deliver them to him.  Defendant would also use the personal identifying information of others to apply for CARES Act relief loans in their names, falsely stating that they ran businesses.  As a result of this fraud, defendant and his co-conspirators defrauded federally-insured financial institutions including Bank of America and Capital Plus Financial.

Count Two, 18 U.S.C. § 1028A

Beginning on an unknown date, and continuing through at least July 22, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant BOBBY JOE JACKSON JR. knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person during and in relation to a felony violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Bank Fraud, as charged in Count One, knowing that the means of identification belonged to another actual person.

## AFFIDAVIT

I, Lyndon A. Versoza, being duly sworn, hereby depose and state as follows:

### I.   TRAINING AND EXPERIENCE

1.   I am a United States Postal Inspector employed by the United States Postal Inspection Service ("USPIS"), Los Angeles Division, in Los Angeles, California, where I have served since June 2005.  Currently, I am responsible for investigating criminal violations of money laundering and structuring laws, such as when the services of the United States Postal Service are employed by criminals as part of the means to launder or conceal illicit funds, and/or avoid banking reporting requirements.  I am also one of seven Postal Inspectors in the U.S. currently designated by USPIS as a Subject Matter Expert ("SME") in money laundering investigations.  As a SME, I have spoken at money laundering conferences and provided training to the financial and banking industry and other law enforcement agents. I have also received both formal and informal money laundering training from USPIS and other government and private agencies.  During my almost 18-year career as a Postal Inspector, I have investigated: mail thieves, burglars, rapists, murderers, armed robbers, prison and street gangs, drug trafficking organizations, and perpetrators of financial

violations (including money launderers, darknet vendors, digital currency launderers, identity thieves and fraudsters).  For approximately five years prior to investigating money laundering, I was assigned to investigate child exploitation and sex trafficking.  In that assignment, I worked both independently and in a task force where I led and participated in investigations related to crimes involving the exploitation of children and sex trafficking domestically and internationally.  In that capacity, I also earned a designation by USPIS as a SME in Child Exploitation Investigations.

2.   From 2002 to 2005, prior to my service as a US Postal Inspector, I served as a law enforcement officer with the US Immigration and Naturalization Service, which later became part of the US Department of Homeland Security.  In this capacity I enforced immigration and customs law at an international airport and seaport, and later, worked in an intelligence unit for local and national counter-terrorism and smuggling operations.

3.   I am familiar with the facts and circumstances described herein.  This affidavit is based upon my personal involvement in this investigation, my training and experience, and information obtained from various law enforcement personnel and witnesses, including information that has been reported to me either directly or indirectly.  This affidavit does not purport to set forth my complete knowledge or understanding of

the facts related to this investigation.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.  All figures, times, and calculations set forth herein are approximate.

## II.  <u>SUMMARY AND PURPOSE OF AFFIDAVIT: COMPLAINT</u>

4.    This affidavit is made in support of a criminal complaint against BOBBY JOE JACKSON JR. ("JACKSON") for violations of 18 U.S.C. §§ 1344 and 1349 (conspiracy to commit bank fraud), and 1028A (aggravated identity theft).

5.    From March through July 2022, I investigated JACKSON for his role in an unemployment fraud scheme through the California Employment Development Department ("EDD") and a loan fraud scheme through the Small Business Administration ("SBA"). I also learned that JACKSON, who was on federal probation at the time, and was lying to his probation officer about his conduct and whereabouts.

6.    On July 22, 2022, a federal search warrant was executed at the residence of JACKSON at 194 S. Tamarisk, Rialto, CA 92376 ("JACKSON Residence"). During the search, numerous stolen credit cards and social security cards were found, along with fake identification cards and driver licenses in names matching the stolen cards but with photos of JACKSON. Several Visa Debit cards issued by California Employment Development

- 3 -

Department in the names of stolen identities were also found, indicative of unemployment insurance fraud.

7.    I interviewed JACKSON who admitted to buying stolen identities from McArthur Park, using them to commit fraud, and filing for at least 20 California Employment Development Program claims using the stolen identities, and receiving about $15,000 from each successful claim. Jackson used the stolen identities to fraudulently file for Paycheck Protection Program ("PPP") or Economic Injury Disaster Loans ("EIDL") and also used them to rent property, which he would sublease to tenants who could not qualify for the property. Jackson used cash from his fraud scheme to buy assets, including a $35,000 commercial truck he paid for in cash. Jackson also admitted to lying to his probation officer about living in Compton when, in fact, he lived at a different address, and did not disclose his income or loan applications to probation.  JACKSON was later arrested for violating the conditions of his supervised release based on the conduct described above, and is currently serving the revocation sentence imposed.

    III.  **PROBABLE CAUSE STATEMENT**

A.    JACKSON CONSPIRED TO COMMIT FRAUD

    8.    On or about March 16, 2022, I spoke with EDD Investigator Ivant Romo who reviewed EDD records and told me that JACKSON was associated to multiple EDD claims in Las Vegas,

- 4 -

Nevada.  Specifically, on or about March 15, 2020, an unemployment insurance application using the address of 3897 Gulliver Street, Las Vegas, Nevada and JACKSON's personal identifying information, was filed.  EDD Investigator Romo told me that along with JACKSON, 18 other unemployment insurance claims were filed from that same address in 2020 using the identifying information of different individuals.  JACKSON, in an interview (as later described in this affidavit), told me that some of these claims were either victims whose identities he used, or members of his conspiracy.

9.   EDD Investigator Romo also told me JACKSON's EDD application in his true name also used the JACKSON Residence as a mailing address.  A second EDD unemployment application for the JACKSON Residence was filed under the name whose initials are "S.R.B."

10.   I reviewed ATM surveillance videos and observed a person that I recognized based on his DMV photo as JACKSON conducting the ATM cash withdrawals on his own card.

B.   JACKSON CONSPIRED WIH HIS RELATIVES

11.   On or about May 4, 2022, I reviewed prison emails sent between JACKSON and "Moma Baby."  In one email dated January 28, 2022, JACKSON responds to Moma Baby and said:

GOOD MORNING YES I DID HER FORGIVENESS THING FOR HER SHE
WAS ONE OF THE FIRST PEOPLE THAT I DID DO I WILL DOUBLE
CHECK WHEN I GET HOME OKAY BUT YES I BELIEVE ITS DONE OKAY

I WILL SEE YOU IN 23 DAYS THAT'S WHEN I WILL BE BACK I WILL
COME BY OKAY. SAVE THE LETTER SO THAT I CAN READ IT OKAY, I
GOT YOU
-----Baby, Moma on 1/28/2022 8:36 AM wrote:
>
Good morning they sent my daughter sum thing saying that
she might have to pay back that money u got for her did u
do the
forgiveness thinh

12.  I believe this email is talking about JACKSON having
applied for a PPP Loan for Moma Baby's daughter.  JACKSON also
confessed to me that he facilitated numerous loans and loan
forgiveness applications including the loan and loan forgiveness
for Moma Baby's daughter.

C. JACKSON's Own PPP and EIDL Applications Were Fraudulent

13.  On June 8, 2022, I spoke with Small Business
Administration, Office of the Inspector General, Special Agent
Angel Huling.  SA Huling told me JACKSON, using the JACKSON
Residence address and a phone number which I later confirmed
through US Probation belonged to JACKSON (the "JACKSON Phone"),
applied for Paycheck Protection Program Loans (PPP) and Economic
Injury Disaster Loans (EIDL) in his true name.  JACKSON was
approved for the PPP loan for $20,832, but his EIDL application
was denied.

14.  On June 14, 2022, I reviewed the PPP loan application
that I received from SA Huling.  According to the application,
JACKSON (who attached his California Driver License to the

application) claimed to be an Independent Contractor who started his business on March 1, 2018.  I later spoke with US Probation who told me JACKSON was in federal custody on March 1, 2018, and was not released until November 25, 2019.  His probation was revoked on November 1, 2021.

15.   In the PPP application JACKSON also stated his gross income was $120,000 with a net income of $45,000.  (The income JACKSON reported in his loan application contradicts the income reported to US Probation, where he claimed to be unemployed.)

16.   In the PPP application, JACKSON attested "NO" to the following question:

> Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?  NO
> Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? NO

17.   JACKSON executed the documents for the loan on April 15, 2021.  He commenced probation on November 25, 2019, about 5 months prior to his loan application.  According to the SBA, the PPP loan to JACKSON has since been forgiven.

- 7 -

D. JACKSON Submitted Another Fraudulent PPP Application in the Name of his Uncle, Gino Hickey

18.   SA Huling also sent me another application for Gino Hickey ("Hickey") at the JACKSON Residence.  The application appears similar to JACKSON's with the same reported gross income of $120,000 for the same requested loan amount of $20,832.  Like JACKSON's application, the Hickey application also claimed that Hickey was an independent contractor.  Hickey's loan was also approved and has since been forgiven. (I later learned during my interview of JACKSON that Hickey is JACKSON's uncle and this was also a fraud committed by JACKSON and Hickey).

19.   On June 14, 2022, I reviewed banking records from Capital Plus Financial ("CPF").  According to their website CPF "is a real estate financial institution specializing in residential mortgage lending in the Hispanic single-family residential market of the Dallas/Fort Worth, Houston, and San Antonio areas." From reviewing the banking records I learned that Capital Plus Financial performed a review related to the PPP loan application of JACKSON and Hickey and reported:

> CPF has reviewed the above referenced application and loan file and found that the borrower failed to provide appropriate documentation. Borrower and Hickey both applied for an SBA loan as an Independent Consultant, Commercial and Institutional Building Construction, NAICS (236220).
> [JACKSON] and Hickey are connected provided the same address on their PPP loan applications; 194 South Tamarisk Ave, Rialto, California 92376. Each borrower also provided very similar Schedule C documents.
> [JACKSON] and Hickey provided a draft 2020

- 8 -

Schedule C that states the borrower and Hickey have a gross income of $120,000.00 each, JACKSON's expenses of $66,000.00, and a net profit of $45,000.00, while Hickey has expenses of $65,000.00 and a net profit of $46.000.00. The Schedule Cs are very similar. The business type and NAICS code matches, the addresses are the same, the gross revenue is the same. The expenses are different by $1,000.00 however the type of expenses are identical (the line items).

In conjunction with the loan documents and activity described above, borrowers were approved and funded for a PPP loan in the amount of $20,832.00.00 each for a total of $41,664.00. The loss to CPF is $41,664.00.

The borrowers appear to have obtained a PPP loan based on the above-described conduct which may constitute fraud which CPF finds suspicious.

20.  On July 22, 2022, I told Hickey that I was aware that he committed fraud with Jackson, and that his application for a PPP loan was fraudulent.  I told Hickey that I know that he did not earn the income stated in his application, and that he was never an independent contractor.  Hickey said "uh huh," acknowledging what I had said; he never denied participating in the fraud.

E.    JACKSON LIED TO PROBATION

21.  On May 24, 2022, I spoke with United States Probation Officer Robert Gardner who supervises JACKSON.  According to Probation Officer Gardner, he communicated with JACKSON through the JACKSON Phone.  Officer Gardner said JACKSON was supposed to report all income to his probation officer.  Officer Gardner said JACKSON claims to be unemployed and did not report receiving state benefits for unemployment or any other financial

- 9 -

benefits.  Officer Gardner also said that JACKSON used to live at the JACKSON Residence but no longer lives there.  Instead, the probation officer said, JACKSON claimed he occupies a converted garage at 919 address on North Locust Ave, Compton, California.  (However based on my investigation and as discussed below, I know that JACKSON was not truthful with Officer Gardner).

F.   SEARCH WARRANTS ISSUED AND EXECUTED AT THE JACKSON RESIDENCE: EVIDENCE OF FRAUD FOUND

     22.  On July 15, 2022, the Honorable U.S. Magistrate Judge John E. McDermott authorized a search warrant for the residence of JACKSON in Rialto, California ("JACKSON Residence").

     23.  On July 22, 2022, I, along with other law enforcement agents executed the federal search warrant at the JACKSON Residence.  During this search, agents found numerous stolen credit cards and social security cards in names other than Jackson.  Along with the stolen cards, also found were fake identification cards and driver licenses in names matching the stolen cards but with photos of JACKSON as the bearer of the fake IDs.  We also found several Visa Debit cards issued by California Employment Development Department in the names of stolen identities.

G.   JACKSON ADMITTED TO COMMITTING FRAUD

     24.  On July 22, 2022, FBI Special Agent Lynne Zellhart and

- 10 -

I interviewed JACKSON who told us that he would buy stolen identities from McArthur Park. The identity profiles he bought would include fake driver licenses bearing his photo, along with social security numbers and fake credit cards and other PII.

25.   JACKSON said he would use the stolen identities to commit fraud.   JACKSON stated that he has filed for at least 20 California Employment Development Program (EDD) claims using the stolen identities and received about $15,000 from each successful claim.   JACKSON would go to bank ATM machines and would hire others to withdraw the fraudulent cash to avoid detection.   Occasionally JACKSON would conduct the withdrawal himself.

26.   In my discussion with JACKSON, I went down the list of identities that EDD Investigator Romo previously provided me of fraudulent claims from addresses tied to JACKSON.   JACKSON identified some of those names as identities he had purchased for his scheme.   Others he said belonged to his conspirators. JACKSON claimed he did not remember all of the names.

27.   JACKSON also said he used the stolen identities and identities of friends and family to fraudulently file for PPP or EIDL loans.   These identities would include his uncle, Gino Hickey, and daughter.   JACKSON would also assist in filing the paperwork for loan forgiveness of the fraudulent loans of his friends and family. JACKSON admitted that the documents he

signed or produced to Small Business Administration were fraudulent and that he and the beneficiaries of the loans (his family members and friends) knew they were not entitled to the loans.

28.  JACKSON also used the stolen identities to rent property which he would sublease to tenants who could not qualify for the property.

29.  JACKSON used cash from his fraud scheme to buy assets including a $35,000 commercial truck he paid for in cash.

30.  JACKSON acknowledged lying to his probation officer about living in Compton when in fact he lived at the Tamarisk Address. JACKSON also admitted that he did not disclose his income or his loan applications to probation.

///

IV.   **CONCLUSION**

31.   For the reasons stated above, there is probable cause
to believe that BOBBY JOE JACKSON JR violated 18 U.S.C. 1344 and
1349 (conspiracy to commit bank fraud), and 1028A (aggravated
identity theft).


Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by telephone on this <u>11th</u> day of April, 2023.


_____                    PVC
UNITED STATES MAGISTRATE JUDGE

- 13 -