**SHAWKY LAW**
Tarek Shawky (S.B.# 245312)
871 E. Washington Blvd., #205
Pasadena CA 91104
Telephone: (323) 393-3301
Email: TShawky@Shawkylaw.com
*Attorney for Bobby Joe Jackson*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>BOBBY JOE JACKSON | Case No. 2:23-cr-00210<br>**NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE PER RULE 41(h) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE** |

**TO THE HONORABLE DALE S. FISCHER, US DISTRICT COURT JUDGE, THE UNITED STATES ATTORNEY AND CLERK OF THE COURT,** please take notice that Mr. Bobby Joe Jackson, by and through counsel submits the following notice of motion and motion to suppress evidence pursuant to Rule 41(h) of the Federal Rules of Criminal Procedure. The motion is based on this notice, the attached memorandum of points and authorities and any additional argument that may be presented at the time of the hearing.

Date:  April 4, 2024

Respectfully Submitted,

*tarek shawky*
_____
Tarek Shawky
Attorney for Bobby Jackson

1

# TABLE OF CONTENTS

                                                                                 **Page**

I.    TABLE OF AUTHORITIES…………………………………………..3

II.   STATEMENT OF FACTS…………………….…..……………….4

III.  MEMORANDUM OF POINTS AND AUTHORITIES………………7

IV.  ARGUMENTS

      A. THE EVIDENCE SEIZED AND INVENTORIED IN THE US PRIVATE VAULTS CASE WAS DEEMED UNLAWFULLY SEIZED AND PROHIBITED FROM BEING USED IN ANY INVESTIGATION, THAT SAME EVIDENCE WAS UASED AGAINST MR. JACKSON AND MUST BE EXCLUDED AS FRUIT OF THE POISONOUS TREE ……………………………….……………………....……7

      B. WHILE MR. JACKSON WAS ON PROBATION AT THE TIME OF HIS SEARCH AND ARREST, HE STILL MAINTAINS HIS RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE ……………………………………….…………………11

      C. MR. JACKSON HAS STANDING TO CHALLENGE THE SEARCH BASED ON DERIVATIVE AND VICARIOUS STANDING ……………………………………………………....13

V.    CONCLUSION………………………….....…………………..……16

VI.  CERTIFICATE OF COMPLIANCE………………………………18

VII. EXHBIT A ………………………………………………......…...

VIII. EXHBIT B …………………………………...………………....

IX.  DECLARATION OF BOBBY JACKSON…………………………..

# TABLE OF AUTHORITIES

**CASES**                                                                                **PAGES**

Frimmel Mgmt., LLC v. United States, (9th Cir. 2018) 897 F.3d 1045, 1051…11

Hair v. United States, (1961) 289 F.2d 894, 897……………………………….14

Jones v. United States, 1960, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697..14

Mapp v. Ohio, supra, 367 U.S. at pp. 646-660…………………………………..9

McDonald v. United, States (1948) 335 U.S. 451…………………………..13,14

Nelson v. United, States (1953) 208 F.2d 505, 514…………………………14,15

People v. Williams, (1988) 45 Cal.3d, 126,…………………………………….9

Samson v. California, 547 U.S. 843, 848, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006) …………………………………………………………………………..12

Silverthorne Lumber Co. v. United States,(1920) 40 S.Ct.182, 183...................16

Snitko v. United States, (9th Cir. 2024) 90 F.4th1250…………......…4,5,6,7,8,9,13

Stone v. Powell, (1976) 428 U. S. 465, 492……………………………………11

Terry v. Ohio, (1968) 392 U. S. 1, 12)………………...………………………10

United States v. King,(9th Cir. 2013) 711 F.3d 986, 990……….………..11,12

United States v. Knights, (2001) 534 U.S. 112,114…………………………...12

Utah v. Strieff, (2016) 136 S. Ct. 2056, 2061…………………………………..11

Weeks v. United States, (1914) 232 U. S. 383, 394……………………………11

Wong Sun v. United States, (1963) 371 U.S. 471, 488)…………….......……11,15,16

**STATUTES**

18 U.S.C. 1349………………………………………………………….……….4

18 U.S.C. 1028A……………………………………………………….………..4

**FEDERAL RULES**

Federal Rule of Criminal Procedure 41(b)…………………………………….4

**STATEMENT OF FACTS**

Mr. Bobby Jackson is alleged to have committed one count of conspiracy to commit bank fraud in violation of 18 USC 1349, and one count of unlawful possession, transfer and use of the personal identification of another in violation of 18 USC 1028A. The conduct is alleged to have occurred on or before July 22, 2022.

Federal agents first learned of Mr. Jackson's alleged misconduct in this case during an investigation of US Private Vaults (USPV), a business that rented safety deposit boxes in Beverly Hills. The government obtained a warrant to search and seize property from USPV's facility as part of the investigation of suspected criminal activities. The initial USPV warrant did not authorize a criminal search or seizure of contents from locked vault boxes and required agents to follow their written policies to inventory items and contact individual box owners to claim their property after any seizures. (Snitko v. United States (9th Cir. 2024) 90 F.4th 1250.) Following the seizure and inventory of their property, plaintiffs filed suit seeking the return of their property pursuant to Federal Rule of Criminal Procedure 41(b) and violations of their Fourth and Fifth Amendment rights. (CACD Case 2:21-cv-04405-RGK-MAR). Although plaintiffs' property was eventually returned, plaintiffs continued to pursue equitable relief, seeking the return or destruction of all records from the inventory search. The district court denied plaintiffs' request to destroy records, but the 9th Circuit reversed that decision in a published opinion issued January 23, 2024. (Snitko v. United States (9th Cir. 2024) 90 F.4th 1250).

Mr. Bobby Jackson's case is inextricably linked to the Snitko v. United States matter. Agents first learned of Mr. Jackson following the unlawful search and inventory procedure of the private vaults' safety deposit boxes. Following the unlawful search, police obtained several warrants for individuals including

warrants for the residences and storage units belonging to Mr. Mitchell Magee and Mr. Michael Magee. (Lyndon Versoza Warrant Affidavit, Exhibit A, Warrant Affidavit p. 9). While searching the Magee properties, agents came across the name of "Bobby," and based on Magees' phone records, US Postal Inspector Lyndon Versoza believed "Bobby" was Mr. Bobby Jackson. (**Exhibit A**- Versoza Warrant Affidavit, p. 9). Inspector Versoza unlawfully searched the laptop belonging to Mr. Mitchell Magee and discovered a lease agreement for a residential property associated with Mr. Bobby Jackson. (**Exhibit A**- Versoza Warrant Affidavit, Affidavit, p. 9). The inspector also located a number of EDD unemployment claims filed by 18 individuals, all using an address associated with Bobby Jackson in Las Vegas. (**Exhibit A**- Versoza Warrant Affidavit, p. 10). In the signed affidavit supporting the warrant, Inspector Versoza identifies Bobby Jackson as a member of the same conspiracy which included Mitchell and Michael Magee. (**Exhibit A**- p. 5).

    On June 16, 2022, the Honorable Magistrate Judge Margo Rocconi issued a warrant in 2:22-MJ-02364 for cell phone data for Bobby Joe Jackson. On July 15, 2022, the Honorable John McDermott, US Magistrate Judge signed a search warrant granting permission to search Mr. Jackson's home and property for related records and documents. The warrant affidavits were based on evidence and information unlawfully obtained from the US Private Vaults searches and seizures that were deemed unlawful and inadmissible against Jackson's co-conspirators. (Snitko v. United States (9th Cir. 2024) 90 F.4th 1250). Following the service of the warrants, Mr. Jackson was subsequently detained and arrested. He was charged in the underlying indictment and has already served more than 19 months in federal custody for the alleged misconduct. He has completed 13 months on a federal violation of probation and an additional 6 months detention pending the outcome of this criminal prosecution. Following his incarceration on the probation

violation, Mr. Jackson was transferred to the Metropolitan Detention Center in Los Angeles where he continues to remain incarcerated.

During oral arguments before the 9th Circuit panel in Snitko v. USA, the Justices made their position clear that the government search and seizure of the safety deposit boxes exceeded the scope of the warrant. Following the oral arguments, the government filed a motion to vacate and remand the matter with instructions to the District Court to grant Plaintiff's requested relief. (**Exhibit B**-C.A. No. 22-56050, Dkt # 48). In their moving papers the government indicates that they understand and appreciate the Court's serious Fourth Amendment concerns about the inventory search conducted at Private Vaults. (**Exhibit B-**C.A. No. 22-56050, Dkt # 48, p. 2). The government then asks the court to "order the FBI to sequester or destroy the records of its search pertaining to all class members, *so that they can no longer be used for investigative purposes*." (Id. emphasis added). The 9th Circuit Panel agreed and issued their ruling January 23, 2024, reversing and remanding the District Court ruling, finding that the plaintiffs' 4th Amendment rights were violated, and the court included instructions to the Circuit Court to order the FBI to sequester or destroy the records of its inventory search. (Snitko, 90 F.4th 1250). The records that the court ordered destroyed against Mr. Jackson's conspirators in the Snitko case are the same records cited by the government to support the warrants obtained and used against Mr. Bobby Jackson that resulted in his arrest and prosecution.

# MEMORANDUM OF POINTS AND AUTHORITES

## A. THE EVIDENCE SEIZED AND INVENTORIED IN THE US PRIVATE VAULTS CASE WAS DEEMED UNLAWFULLY SEIZED AND PROHIBITED FROM BEING USED IN ANY INVESTIGATION, THAT SAME EVIDENCE WAS UASED AGAINST MR. JACKSON AND MUST BE EXCLUDED AS FRUIT OF THE POISONOUS TREE

Investigators first became aware of Mr. Bobby Jackson following the unlawful search and seizure of evidence from US Private Vaults, Beverly Hills. In their initial warrant request, the FBI and the U.S. Attorney's office had not asked to seize the contents of the individual boxes in the vault and conveniently omitted their plans to do so in the warrant application. They instead assured U.S. Magistrate Judge Steve Kim that their intent was only to inventory the vault boxes and that agents would follow FBI policies for taking inventory of the box contents in order to protect against theft allegations, then contact the box owners about retrieving their property. (Snitko v. United States (9th Cir. 2024) 90 F.4th 1250.). In fact, the warrant authorized by Judge Kim specifically stated that "This warrant does not authorize a criminal search or seizure of the contents of the safety [sic] deposit boxes." (Snitko (2024) 90 F.4th 1250, 1254.). Agents obtained the warrant and conducted a thorough criminal search of the safety deposit boxes of all customers, which included those belonging to Mr. Michael and Mitchell Magee. The FBI and US Attorneys misled the Judge and attempted to circumvent the limits of the warrant by issuing a "Supplemental Instructions on Box Inventory" which was never provided to Judge Kim. (Snitko v. United States (9th Cir. 2024) 90 F.4th 1250, 1256.). The secret supplemental instructions included how to collect cash in evidence bags, process it for forfeiture, and provided that drug sniffing dogs would be onsite to assist. (Snitko v. United States (9th Cir. 2024) 90 F.4th 1250, 1256.).

The government conducted what is we now know was an illegal search and seizure, then used information found during the search and inventory process to obtain more search warrants from individuals not associated with the US Bank Vaults business, including Bobby Jackson. Warrants issued for property belonging to Mr. Magee at his residence. Items seized from Magee resulted in the government finding connections between Mr. Magee and Mr. Bobby Jackson. The government then obtained additional warrants for Mr. Bobby Jackson's home, property and phone records based on allegations that Mr. Jackson was determined to be a coconspirator. (Exhibit A- Versoza Probable Cause Statement p. 5). The fruits of those warrants resulted in the filing of an indictment and subsequent arrest of Mr. Bobby Jackson. While the government once attempted to characterize the search and seizures of the private vaults as a legitimate inventory search, the 9th Circuit disagreed and said "If there remained any doubt regarding whether the government conducted a 'criminal search or seizure,' that doubt is put to rest by the fact the government has already used some of the information from inside the boxes to obtain additional warrants to further its investigation and begin new ones." (Snitko (9th Cir. 2024) 90 F.4th at 1264). The 9th Circuit Court held that the District Court abused its discretion in concluding that the government did not exceed the scope of the warrant (Id. at 1265). The government ultimately conceded that suppression and destruction of all records of the evidence was the proper course of action. The court agreed stating that "In light of the government's expressed willingness in its 'Motion to Vacate and Remand with Instructions to Grant Plaintiffs' Requested Relief,'" the panel ordered the district court to order the FBI to sequester or destroy the records of its inventory search pertaining to class members and to dispose of the records, including copies of the records kept on the Sentinel database. (Id. at 1266).

Following the oral arguments in Snitko, the government all but conceded the evident illegality of the underlying search of the vaults when they filed a motion to vacate and remand the District Court ruling. The government's brief indicates that:

> "The government understands and appreciates the Court's concerns expressed at oral argument. Having reflected on those concerns following oral argument, the government seeks an equitable order that will afford Plaintiffs the maximum remedy available consistent with their request for relief. Specifically, this Court should vacate and remand with instructions that the district court "order the FBI to sequester or destroy the records of its search pertaining to all class members, so that they can no longer be used for investigative purposes."
> (**Exhibit B -**CACD 22-56050, Dkt. # 48, page 4 of 5).

Given that the parties agree that the government's underlying search and inventory of US Private Vaults unlawfully exceeded the scope of the warrant, any evidence seized pursuant to that search becomes tainted by the illegality and should be suppressed pursuant to the "fruit of the poisonous tree" doctrine. Any evidence which flows from an illegal detention, arrest, search, or seizure is tainted by the illegality and must be suppressed. If the challenged government conduct is shown to be violative of the Fourth Amendment, the exclusionary rule requires that all evidence obtained as a result of such conduct be suppressed. (People v. Williams (1988) 45 Cal.3d 1268, 1299; Mapp v. Ohio, supra, 367 U.S. at pp. 646-660). Such evidence includes not only what was seized in the course of the unlawful conduct itself -- the so-called "primary" evidence but also what was subsequently obtained through the information gained by the police in the course of such conduct -- the so-called "derivative" or "secondary" evidence, the "fruit of the poisonous tree," as well as the tree itself, must be excluded. (People v. Williams (1988) 45 Cal.3d 1268, 1299).

All evidence against Mr. Jackson in the underlying case including seized records, verbal admissions, all his statements and any physical evidence, constitute

9

derivative evidence obtained as a result of the unlawful search and seizure from the US Private Vaults investigation. US Postal Inspector Lyndon A. Versoza who authored the probable cause statement in support of the search warrant stated the following:

> "I also reviewed records found in the MITCHELL's laptop, which was was recovered at MITCHELL's residence pursuant to Judge McDermott's warrant. In the laptop was a lease agreement for 194 S. Tamarisk, Rialto, CA 92376 ("Tamarisk Address") for a tenant using the name whose initials starts with "J.S." for October 2019 through October 2020 for $1200 a month. I reviewed public record searches for the Tamarisk address and learned that it is associated with BOBBY JACKSON."
>
> (**Exhibit A**- Versoza Probable Cause Statement).

Inspector Versoza writes in her statement that she links Mr. Jackson to an alleged conspiracy involving Mitchell and Michael Magee based on text messages and phone records belonging to the Magee brothers. (<u>Id.</u>). Versoza's probable cause statement makes clear that Mr. Jackson became a suspect and alleged conspirator following the discovery of the information and evidence obtained through the search and inventory process that began through the US Private Vaults, Beverly Hills unlawful search of the deposit boxes. As such, all evidence against Mr. Jackson constitutes fruit of the poisonous tree and is inadmissible and therefore should be suppressed and the criminal case should be dismissed.

The "exclusionary rule" removes an incentive for officers to search us without proper justification. (Terry v. Ohio, (1968) 392 U. S. 1, 12). It also keeps courts from being "made party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions." (<u>Id.</u> at 13). When courts admit only lawfully obtained evidence, they encourage "those who formulate law enforcement policies, and the officers who implement them, to incorporate Fourth Amendment ideals into their value system."

(Stone v. Powell, (1976) 428 U. S. 465, 492). But when courts admit illegally obtained evidence as well, they reward "manifest neglect if not an open defiance of the prohibitions of the Constitution." (Weeks v. United States, (1914) 232 U. S. 383, 394).

"It is well settled that evidence seized during an unlawful search cannot constitute proof against the victim of the search." (Frimmel Mgmt., LLC v. United States, (9th Cir. 2018) 897 F.3d 1045, 1051. "The exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called 'fruit of the poisonous tree.'" (Utah v. Strieff, (2016) 136 S. Ct. 2056, 2061; see also Wong Sun v. United States, (1963) 371 U.S. 471, 488).

## B. WHILE MR. JACKSON WAS ON PROBATION AT THE TIME OF HIS SEARCH AND ARREST, HE STILL MAINTAINS HIS RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE

At the time of the search of Mr. Jackson's home and property, Mr. Jackson was on federal probation based on a 2011 conviction. Mr. Jackson's status as a probationer means that he begins with a lower expectation of privacy than is enjoyed by a citizen who is not subject to a criminal sanction. (United States v. King (9th Cir. 2013) 711 F.3d 986, 990). "Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty. . . . Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." (Id.)

The King court stated in part that a defendant on probation has a greater expectation of privacy than does a parolee "[s]o we do not go so far as to hold, as the Samson Court did, that Defendant did not have an expectation of privacy that society would recognize as legitimate." (United States v. King (9th Cir. 2013) 711

F.3d 986, 990 citing Samson v. California, 547 U.S. 843, 848, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006). "But we do conclude that Defendant's expectation of privacy was small." (United States v. King (9th Cir. 2013) 711 F.3d 986, 990.). As in King, Mr. Jackson has a legitimate, reasonable expectation of privacy in his person and possessions, and the government is still required to comply with established, judicially sanctioned legal procedures before conducting a search or seizure. The government's actions in this case did not comply with those judicially sanctioned standards.

    The court has laid out a reasonable search test in determining whether the government's actions violate the Fourth Amendment for individuals on probation or parole. "Probation diminishes a probationer's reasonable expectation of privacy -- so that a probation officer may, consistent with the Fourth Amendment, search a probationer's home without a warrant, and with only reasonable grounds (not probable cause) to believe that contraband is present. (United States v. Knights (2001) 534 U.S. 112, 114). The courts "examine the totality of the circumstances" to determine whether a search is reasonable within the meaning of the Fourth Amendment. (Knights, (2001) 534 U.S. at 118). Whether a search is reasonable "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." (Id., at 118-119).

    In this case, Mr. Jackson's reasonable expectation of privacy was infringed upon based on the unlawfully obtained evidence which was seized only after the government misled a Federal Judge and exceeded the scope of the warrant served at US Private Vaults. That evidence was inadmissible, and the subsequent search of Mr. Jackson's home constitutes a violation of his rights based on the fruit of the poisonous tree doctrine. While Mr. Jackson does understand he had a reduced expectation of privacy given his probationary status, that limited expectation does not negate the unlawful conduct that led to the unlawful search of his property.

## C. MR. JACKSON HAS STANDING TO CHALLENGE THE SEARCH BASED ON DERIVATIVE AND VICARIOUS STANDING

The government concedes that the underlying search and inventory of the US Bank Vaults location was unlawful. The government urged the Snitko court to order the FBI to sequester or destroy the records of its search so that they can no longer be used for investigative purposes. Meanwhile, the government used the unlawfully obtained evidence for investigative purposes and obtained a warrant for Mr. Jackson. The warrant for Mr. Jackson is based on an illegal seizure and relies on the false presumption that Mr. Bobby Jackson does not have valid standing to challenge the search of his residence and property.

Mr. Jackson does in fact have standing to challenge the warrant and search of his property. In McDonald v. United States, the government unlawfully entered into McDonald's room and obtained evidence that was admitted at trial against McDonald as well as his co-conspirator, Mr. Washington. (McDonald v. United States (1948) 335 U.S. 451). The lower court denied the suppression motion as to both individuals and they were convicted at trial. The Supreme Court, after finding the search unlawful, held that Washington, a guest assumed to be without standing in the searched home, was also entitled to a new trial in which the seized items would not be admitted against him. (McDonald (1948) 335 U.S. 451, 456). "Even though we assume, without deciding, that Washington, who was a guest of McDonald, had no right of privacy that was broken when the officers searched McDonald's room without a warrant, we think that the denial of McDonald's motion was error that was prejudicial to Washington as well." (Id.)

Following the McDonald opinion, the D.C. circuit court of appeals found similar derivative standing in Hair v. United States for a codefendant (Burroughs) who had no possessory interest in the property that was unlawfully searched and

seized as to Mr. Hair. (Hair v. United States (1961) 289 F.2d 894, 897). The court in Hair found persuasive appellant Burrough's contention that like Hair, his conviction must also be reversed because the illegally obtained evidence was admitted against him as well as Hair. (Id.) "The property seized was not Burroughs', and he had no interest in the premises unlawfully invaded. Ordinarily one seeking to challenge the legality of a search or seizure must establish that he was the victim of the alleged invasion of privacy." (Hair v. United States (1961) 289 F.2d 894, 897) (Jones v. United States, 1960, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697). Citing McDonald, the court relies on the same reasoning whereby the McDonald opinion reversed McDonald's conviction and Washington's as well, reasoning that the denial of McDonald's motion to suppress was prejudicial to Washington because, had the motion been granted, the evidence would not have been available for use at the trial. (Hair v. United States (1961) 289 F.2d 894, 897).

      The D.C. Appellate circuit extended this derivative standing theory beyond codefendants to include individuals charged in separate cases that involved the same unlawfully obtained evidence. In Nelson v. United States, Nelson appealed the denial of his suppression motion and that court reasoned that "as the Supreme Court said of an illegal seizure from an appellant in McDonald v. United States, 'error that was prejudicial to (the other appellants) as well.'" (Nelson v. United States (1953) 208 F.2d 505, 514). "The court did not, and as a practical matter could not, limit the jury's consideration of the unlawfully seized evidence to Nelson alone. Moreover, we think it 'unjust and illogical to separate (these) cases' by reversing the judgment against the one charged with controlling the illegal enterprise and affirming the judgments against those who did his bidding." (Nelson v. United States (1953) 208 F.2d 505, 514). The ruling in Nelson overturned the convictions in eight different cases involving eight separate individuals. (Nelson v. United States (1953) 208 F.2d 505, 514).

These principles are in place to prevent government misconduct and unlawful government actions that violate the 4th amendment rights of one individual in order to successfully prosecute another. This issue was also addressed by the US Supreme Court in Wong Sun v. United States, (1963) 83 S. Ct. 407. Wong Sun was prosecuted based on evidence obtained illegally following a warrantless search of Mr. James Toy. Toy made a statement following the unlawful search and detention naming a suspect Johnny Yee as a possible drug dealer. Wong Sun v. United States, (1963) 83 S. Ct. 407, 474). Police arrested Yee who was found in possession of heroin, and Yee incriminated James Toy, and both men identify Wong Sun as a narcotics supplier (Id. at 475). Toy and Yee were tried together, Wong Sun was tried separately, and the court of appeals ultimately determined that Toy and Yee's warrantless searches were unlawful, any statements and evidence obtained were inadmissible, and the convictions remanded. (Id. at 478). Wong Sun who was tried separately challenged his conviction based on the "fruit of the poisonous tree" doctrine. While the court found that "The seizure of this heroin invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial" the court still overturned the conviction based on the fact that unlawfully obtained statements made by Toy were admitted at trial and used against Wong Sun, and that excludable evidence should not have been admitted against Wong Sun and the case was remanded for a new trial. (Id. at 492) "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." (Wong Sun, (1963) 371 U.S. 471, 485; quoting Silverthorne Lumber Co. v. United States (1920) 40 S.Ct. 182, 183).

In the case of Bobby Jackson, Mr. Magee was unlawfully searched and the evidence obtained has been determined to be unlawfully obtained and the government has already conceded this point in their written briefs to the 9th Circuit. It would be improper and unjust to now allow the government to rely on that same

unlawfully obtained evidence and submit that illegal information to a magistrate in order to obtain a warrant for Mr. Bobby Jackson's home and property. Anything found in Mr. Jackson's home was the result of the unlawful fruits of the US Bank Vaults search and should not be admitted against Mr. Jackson.

# CONCLUSION

Mr. Jackson was searched and arrested as a result of the US Private Vaults, Beverly Hills investigation. Since that investigation began, the government and 9th Circuit Court have agreed that the search and seizure of evidence from US Private Vaults was unlawful and that any evidence obtained as a result shall be returned, and all records of such evidence shall be destroyed. The government conceded this point and filed a motion with the 9th Circuit asking the Court to "order the FBI to sequester or destroy the records of its search pertaining to all class members, so that they can no longer be used for investigative purposes." (**Exhibit B**) Mr. Jackson now moves this court to exclude all evidence against him and dismiss the underlying indictment based on the unlawful search and derivative evidence obtained from it pursuant to the fruit of the poisonous tree doctrine.

Dated: April 4, 2024　　　　　　　　　Respectfully Submitted,

By: *tarek shawky*
　　　Tarek Shawky,
　　　Attorney for Bobby Jackson

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Bobby Jackson, certifies that this brief contains 4,597 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 4, 2024                    Respectfully Submitted,


                                        By: *tarek shawky*
                                            Tarek Shawky,
                                            Attorney for Bobby Jackson